IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF VIRGINIA
Newport News Division

| | | |
|---|---|---|
| DONNA M. HARRAH | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil No. 4:15cv95 |
| | ) | |
| SPECIALIZED LOAN SERVICING, LLC | ) | |
| | ) | |
| Defendant. | ) | |

**SPECIALIZED LOAN SERVICING, LLC'S
<u>MOTION FOR SUMMARY JUDGMENT</u>**

# **TABLE OF CONTENTS**

INTRODUCTION ................................................................................................. 4

STATEMENT OF UNDISPUTED FACTS .......................................................... 5

    Plaintiff's Mortgage Loan ................................................................................ 5

    Plaintiff's Unrelated Litigation with Bank of America, N.A. ......................... 7

    Plaintiff Disputes The HELOC Trade Line to the Credit Reporting Agencies ........................... 9

LAW AND ARGUMENT ................................................................................... 10

        A.   Legal Standard ........................................................................... 11

    B.   Plaintiff Cannot Recover, As a Matter of Law, For SLS Failing to Report the Trade Line as Disputed as Alleged Through Count Three. ................................................. 12

        1)   Plaintiff Never Tendered a Valid Direct Dispute. ................................. 12

        2)   Even if Plaintiff's Correspondence Constituted a Direct Dispute, Her Suit was Not Timely Filed ........................................................................ 14

    C.   Specialized Loan Servicing Is Entitled to Summary Judgment Because Plaintiff Cannot Prove She Was Damaged by the Way In Which It Investigated Her April 2015 Disputes ......... 15

        1)   SLS Accurately Reported Plaintiff's Trade Line ................................. 15

        2)   Plaintiff's Theory Provides No Legally Recognized Basis for Recovery ........... 17

CONCLUSION ................................................................................................... 25

# TABLE OF AUTHORITIES

## Cases

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S. Ct. 2505 (1986) ...................................... 11

*Dauster v. Household Credit Servs., Inc.*, 396 F. Supp. 2d 663 (E.D. Va. 2005) ............ 15, 21, 25

*Drewitt v. Pratt*, 999 F.2d 774 (4th Cir. 1993) ............................................................... 11

*Guimond v. Credit Bureau, Inc.*, Civil No. 1:90-cv-01727 (D. Md. 1990), *aff'd on other grounds*, 955 F.2d 41, 1992 WL 33144 (Feb. 25, 1992)............................................... 16, 21, 25

*Johnson v. MBNA*, 357 F.3d 426 (2004)...................................................................... 15

*McCain v. Waste Mgmt, Inc.*, 115 F. Supp. 2d 568 (D. Md. 2000) ........................................... 11

*Saunders v. Branch Banking and Trust Co. of VA*, 526 F.3d 142 (4th Cir. 2008) ...................... 15

*Scott v. Harris*, 550 U.S. 372, 127 S. Ct. 1769 (2007) ................................................... 11

*Spokeo, Inc. v. Robbins*, 136 S. Ct. 1540, 194 L.Ed. 2d 635 (2016), ......................................... 16

*Todd v. Associated Credit Bureau Servs., Inc.*, 451 F. Supp 447 (E.D. Pa. 1977), *aff'd* 578 F.2d 1376 (3d Cir. 1978), *cert. denied,* 439 U.S. 1068, 99 S. Ct. 834 (1979) ....... 16, 21, 25

*United States v. Diebold*, 369 U.S. 654, 82 S. Ct. 993 (1962)...................................................... 11

*Whelan v. Trans Union Credit Reporting Agency*, 862 F. Supp. 824 (E.D.N.Y. 1994) ... 16, 21, 25

## Statutes

15 U.S.C. § 1681i(a)(2)........................................................................................ 15

15 U.S.C. § 1681n.............................................................................................. 15

15 U.S.C. § 1681o.............................................................................................. 15

15 U.S.C. § 1681p.............................................................................................. 14

15 U.S.C. § 1681s-2(a)(8)(D) ........................................................................... 12, 13

15 U.S.C. § 1681s-2(b) ......................................................................................... 4

15 U.S.C. § 1681s–2(b)(1).................................................................................. 15

## Rules

Fed. R. Civ. P. 56................................................................................................... 4

Fed. R. Civ. P. 56(a) ........................................................................................... 11

COMES NOW Defendant Specialized Loan Servicing, LLC ("SLS"), by and through its undersigned counsel, and pursuant to Fed. R. Civ. P. 56 moves this Honorable Court to grant summary judgment in its favor with respect to Plaintiff's claims under the Fair Credit Reporting Act, 15 U.S.C. § 1681s-2(b) ("FCRA"). In support of its request for relief, SLS states as follows:

## INTRODUCTION

Plaintiff seeks to hold SLS liable because it had the audacity to adhere to the reporting requirements under federal law. In 2014, as she negotiated a settlement in unrelated litigation against Bank of America, N.A. ("BANA"), Plaintiff inquired whether SLS would be willing to delete its credit reporting on her Home Equity Line of Credit (the "HELOC"), which constituted a second trust lien on her primary residence. Knowing that SLS expressly declined her request, Plaintiff nonetheless settled her litigation with BANA, affirmatively acknowledging in the agreement she reached that it was not contingent upon any credit reporting changes to her HELOC. By the time she reached that settlement, however, SLS was no longer servicing her HELOC, nor was it actively furnishing credit reporting information.

Eight months after SLS relinquished any responsibility for the HELOC, Plaintiff challenged its prior credit reporting as being inaccurate because it showed that during the time SLS serviced the loan Plaintiff was seriously delinquent in her payments, resulting in the loan being charged off prior to it being released to Veripro Solutions for servicing. SLS complied with its obligations under the FCRA. It reviewed the complaint Plaintiff lodged and then conducted a searching review of the information in its possession. While the investigation proved Plaintiff's dispute to be without merit, it did reveal some inconsistencies in the way various credit reporting agencies reflected the account, so SLS updated them to accurately reflect the account's status as of the time it transferred servicing.

4

Because Plaintiff cannot demonstrate any inaccuracy in the way SLS reported her trade line, and because the investigation SLS conducted was reasonable, no material issues of fact remain in dispute. SLS is entitled to judgment as a matter of law, and this Court should enter summary judgment on its behalf.

## STATEMENT OF UNDISPUTED FACTS

SLS provides the following material facts with which Plaintiff can raise no reasonable dispute:

### Plaintiff's Mortgage Loan

1. On August 22, 2006, Countrywide Home Loans, Inc. granted Plaintiff a home equity line of credit (the "HELOC") secured by real property identified as Parcel/Tax ID # 24B-01-016 and more commonly known as 22283 Riverpoint Trail, Carrolton, VA 23314 (the "Property"). Ex. A, Home Equity Credit Line Agreement and Disclosure Statement (Harrah 001025 – 001033); Ex. B. Credit Line Deed of Trust (Harrah 001141 – 001148).

2. Bank of America, N.A. serviced the HELOC after it acquired Countrywide's assets; this continued until December 25, 2011 when SLS took over servicing the loan. Ex. C, Notice of Assignment, Sale, or transfer of Servicing Rights dated November 10, 2011 (Harrah 000970 – 000971).

3. At the time SLS assumed responsibility for servicing the HELOC, Plaintiff was in default on her obligations under the HELOC's instruments. Ex. D, Bank of America, N.A. Loan History Statement dated September 17, 2013 (Harrah 000963 – 000969).

4.  By April 16, 2012, Plaintiff had fallen so far behind in her HELOC mortgage payments that E*Trade Bank approved the loan for foreclosure. Ex. E, Email from Default Management to David Sheats dated April 16, 2012 (ETRADE_HARRAH 0000013 – ETRADE_HARRAH 0000017).

5.  On May 15, 2012, Plaintiff sent a letter to SLS. The only reference to the HELOC is the statement by Plaintiff that "[t]his debt is disputed." Ex. F, Letter from Donna Harrah to SLS (Harrah # 000248). This letter contained no further information regarding her "dispute."

6.  On July 11, 2012, SLS reported to the major credit reporting agencies that the loan had been transferred to recovery as a charge off. Ex. G, Automated Universal Dataform dated July 11, 2012 (SLS-462; Hendricks Dep.[1] at 79:15 – 83:4).

7.  Plaintiff received a copy of her Equifax Credit Report on September 4, 2012. Ex. H, Equifax Credit Report dated 9/4/2012 (Harrah # 000419 – Harrah # 000456). The HELOC showed on this credit report in a "CHARGE-OFF" status and bore a comment that the account was "Transferred to recover, Charged off account." *Id.*

8.  On September 5, 2012, Plaintiff received a copy of her credit report from TransUnion. Ex. I, TransUnion Credit Report dated 9/05/2012 (Harrah # 000404 – Harrah # 000418). That credit report showed the HELOC as being in a "Charged Off" status and indicated the credit had been "TRANSFERRED TO RECOVERY." *Id.*

9.  Experian provided Plaintiff a copy of her credit report on September 10, 2012. Ex. J, Experian Credit Report dated September 10, 2012 (Harrah # 000378 – Harrah # 000403). Experian reported the Status as being "Account charged off. $456,878

---

[1] The time for filing of the SLS' Motion for Summary Judgment was driven by the testimony of Plaintiff's proffered expert witness and the receipt of the transcript of the same.

written off. $37,537 past due as of Jul 2012." The report also contained a creditor's statement reflecting the credit was "Transferred to recovery." *Id.*

10. On August 19, 2014, SLS transferred servicing of the HELOC to Veripro Solutions, Inc. ('Veripro"). Ex. K, Notice of Servicing Transfer dated 8/1/2014 (SLS-185).

11. On September 10, 2014, SLS submitted its last report on the HELOC to the credit reporting agencies reflecting that the HELOC was service released, transferred to another lender, and that it was 180+ days past due at the time of transfer. Ex. L, Email from Cathleen Adcock to Patrick McBride, et al dated September 14, 2015 (SLS-377 – SLS-378).

**Plaintiff's Unrelated Litigation with Bank of America, N.A.**

12. On February 14, 2012, Plaintiff filed a lawsuit (the "BANA Lawsuit") in this Court on behalf of herself and all those similarly situated with her against Bank of America, N.A. ("BANA"). *See*, Case No. 4:12-cv-00026-AWA-LRL at Dkt 1. The BANA Lawsuit alleged BANA had violated the Fair Credit Reporting Act ("FCRA") by failing to provide Plaintiff with a copy of her credit score when it denied her loan modification on a purchase money deed of trust secured by the Property in a first lien position. *Id.*

13. On December 9, 2013, BANA approached SLS suggesting that it could "dispose of [the BANA Lawsuit] if the HELOC … is released," and inquired what it would cost to satisfy the lien. Ex. M, Email from Ken Scott to David Burgess and Bryan Sullivan (SLS-352).

14. Once a payoff amount had been agreed, and while BANA was negotiating the terms of the settlement agreement for the BANA Lawsuit with Plaintiff, BANA inquired

how the HELOC would be reported to credit reporting agencies. SLS advised BANA, on April 10, 2014, that using Metro2 reporting codes "it would report as 64 – Account paid in full, was a charge-off and an added comment code of AU – Account paid in full for less than full amount due." Ex. N, Email chain terminating with email from Ken Scott to Patrick McBride dated July 3, 2014 (SLS-308 – SLS-320).

15. On June 23, 2014, BANA advised that Plaintiff "tried to insert a clause [into the BANA Lawsuit settlement agreement] requiring [BANA] to cause the trade line for SLS's loan to be deleted." *Id*. BANA went on to relate that it "had to explain to [Plaintiff] that this is not something [BANA has] the power to do." *Id*. BANA did, however, relate the request to SLS who refused to delete the trade line insisting that unless something in the loan rendered it invalid, SLS could "not violate the FCRA by reporting false information." *Id*.

16. Plaintiff executed a Confidential Settlement Agreement and Release with BANA on August 29, 2014. Ex. O, Confidential Settlement Agreement and Release. (Harrah # 000457 – Harrah # 000465). BANA executed the agreement on September 17, 2014. *Id*.

17. Ultimately, the settlement agreement Plaintiff executed to resolve the BANA Lawsuit recited with respect to the request of SLS to delete the HELOC trade line that Plaintiff "acknowledge[d] and underst[ood] that (1) [BANA] does not control SLS; (2) if SLS act[ed] upon plaintiff's request, [BANA] does not control whether the credit reporting agencies [would] act upon the request, and (3) [BANA] is not otherwise able to guarantee the deletion of the [HELOC] by these credit reporting agencies." Ex. O, Confidential Settlement Agreement and Release. The agreement

further acknowledged that it was "in no way contingent upon the credit reporting agencies ultimately effecting any form of reporting on the [HELOC]." *Id.*

18. BANA tendered the agreed short payoff of the HELOC to E*Trade Bank, the holder of the HELOC, on or about September 25, 2014. Ex. P, Email from David Sheats to Patrick McBride dated January 19, 2016 (SLS-339 – SLS-345). Upon receiving the short payoff proceeds, E*Trade directed Veripro to process a lien release for the HELOC, which was accomplished. *Id.*

**Plaintiff Disputes The HELOC Trade Line to the Credit Reporting Agencies**

19. On or about April 10, 2015, Plaintiff sent identical letters to TransUnion, Equifax, and Experian disputing the manner in which SLS was reporting the HELOC on her credit reports. Ex. Q, Dispute Letters (Harrah # 000159 – Harrah # 000164; Harrah # 000072 – Harrah # 000075; Harrah # 000106 – Harrah # 000111). In particular she asserted:

> I do not owe this debt. It was not "charged off". It is very much disputed. And the creditor is not SPS, but rather the holder and beneficiary – SPS' principal – that reached the agreement and waived the balance in exchange for my release of challenges and claims against the asserted balance.
>
> This loan was originally a second mortgage loan with Bank of America, N.A. Bank of America unlawfully refused to accept my application for a loan modification and otherwise permit relief mandated by its note beneficiary and the Treasury Department under HAMP. I filed a lawsuit, Donna M Harrah v. Bank of America, N.A., No. 4:12-cv-26 (E.D. Va. filed February 14, 2012).
>
> The loan was settled with a waiver – not a chargeoff – the full balance in exchange for my release of all claims against Bank of America, and was negotiated by the bank on its own behalf and on behalf of the holder of the loan that SLS was to service. The final disposition of the lawsuit resulted in a zero balance due and owing Bank of America, N.A. Certainly, at the very least the debt and credit reporting as a chargeoff is disputed.

> *Id.*

20. SLS received a copy of Plaintiff's dispute letter from Equifax via an Automated Credit Dispute Verification ("ACDV"). SLS investigated Plaintiff's dispute and responded to that ACDV on April 24, 2015. Ex. R, ACDV dated April 24, 2015 (SLS-453 – SLS-454). On the same date, SLS submitted an AUD to ensure all of the credit reporting agencies had consistent information. Ex. S, AUD dated April 24, 2015 (SLS-461). The AUD contained Metro2 reporting codes reflecting that as of August 19, 2014, the last date SLS reported the trade line, the account was transferred and that the loan had been in a charged off status since June 2012.

21. Experian also transmitted Plaintiff's dispute letter via an ACDV. After investigating Plaintiff's claims, SLS responded to the ACDV reporting that the account had been transferred to another lender as of August 19, 2014, and that it was charged off in June 2012. Ex. T, ACDV dated April 28, 2015 (SLS-451 – SLS-452).

22. When TransUnion transmitted Plaintiff's dispute, SLS again conducted an investigation. SLS responded to the ACDV with the results of the investigation advising TransUnion that the account had been transferred in a delinquent status. Ex. U, ACDVs dated April 29, 2015 (SLS-437 – SLS-438; SLS-428 – SLS-429). Shortly after sending the response, the SLS employee responsible sent a second ACDV correcting her earlier reporting to ensure the HELOC's charged off status was properly reported. *Id*.

## LAW AND ARGUMENT

Plaintiff's Complaint contains three causes of action. All three counts allege violations of 15 U.S.C. § 1681s-2. In Count One, Plaintiff alleges that SLS failed to "fully and properly investigate" Plaintiff's disputes to the credit reporting agencies. Count Two alleges that SLS

failed to review all relevant information provided by the consumer reporting agencies when they conveyed Plaintiff's dispute. And Count Three seeks to impose liability on SLS for publishing its reporting to the credit reporting agencies without including a notation that the trade line was disputed. As a matter of undisputed fact and as a matter of law, Plaintiff cannot establish the required elements of any of these causes of action, and SLS is entitled to summary judgment.

A. <u>Legal Standard</u>

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). As the Supreme Court explained in *Anderson v. Liberty Lobby, Inc.*, however, "this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48, 106 S. Ct. 2505 (1986) (emphasis in original). And only "facts that might affect the outcome of the suit under the governing law" are material. *Id.* at 248.

In assessing whether a movant is entitled to summary judgment, the court must "view the facts and draw reasonable inferences 'in the light most favorable to the party opposing the [summary judgment] motion.'" *Scott v. Harris*, 550 U.S. 372, 378, 127 S. Ct. 1769 (2007) (alteration in original) (quoting *United States v. Diebold*, 369 U.S. 654, 655, 82 S. Ct. 993 (1962)). This inference, however, is tempered by the court's "affirmative obligation … to prevent factually unsupported claims and defenses from proceeding to trial." *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993) (internal quotation marks omitted); *McCain v. Waste Mgmt, Inc.*, 115 F. Supp. 2d 568, 572-73 (D. Md. 2000) (Williams, J.) (citation omitted).

B. <u>Plaintiff Cannot Recover, As a Matter of Law, For SLS Failing to Report the Trade Line as Disputed as Alleged Through Count Three.</u>

Plaintiff asserts that SLS violated the FCRA because it did not include "a notation that the reported status of the debt was disputed." Compl. at ¶ 32. As Plaintiff's proffered expert Report, Evan Hendricks,[2] explained, this is predicated on SLS' failure to append the Metro2 code "XB" to Plaintiff's trade line after receiving a direct dispute from Plaintiff. *See*, Ex. V, Rebuttal Report of Evan Hendricks at 6 ("SLS damaged Plaintiff when it failed, upon receiving Plaintiff's direct disputes, to notate Plaintiff's tradeline as 'disputed by consumer' with the Metro 2 'XB' code when it furnished the tradeline to CRAs."). Of course, as the FCRA makes clear, a furnisher is only obligated to report a direct dispute containing particularized information. To qualify, a consumer's notice must:

(i)     identify the specific information that is disputed;

(ii)    explain the basis for the dispute; and

(iii)   include all supporting documentation required by the furnisher to substantiate the basis of the dispute.

15 U.S.C. § 1681s-2(a)(8)(D).

1. <u>Plaintiff Never Tendered a Valid Direct Dispute.</u>

In this case, the only communication Plaintiff has identified as a direct dispute consists of a single sentence contained in a cease and desist letter she sent to SLS. *See*, Ex. F ("This debt is disputed."); *See*, Ex. W, Hendricks Depo. at 195:2 – 196:7 ("Q. So then tell me, what is the basis of her dispute? You're the one that made that statement that it's genuine. A. That is one of the assumptions that was given to me, that this was a direct dispute over the account and how it's being portrayed. Q. You were told to assume that this was a direct dispute. Is that your

---

[2] Specialized Loan Servicing does not concede that Mr. Hendricks is qualified under Fed. R. Civ. P. 702 and 703 to provide expert testimony in this case.

testimony? A. Yes. … Q. So your opinion then that SLS failed to comply with the Fair Credit Reporting Act by not putting an XB code is based upon the assumption of Plaintiff's counsel to assume it was a direct dispute? A. Along with this letter, which is a direct dispute.").  As an initial matter, Plaintiff cannot overcome summary judgment merely by assuming the predicate to a cause of action exists. That alone should make clear to the Court that SLS is entitled to summary judgment on Count 3.

Was the Court to overlook the fact that Plaintiff's claim is wholly premised upon an assumption supplied by counsel without any supporting proof, the referenced letter (Ex. F) does not satisfy the statutory requirements to constitute a direct dispute. First, it fails to identify any specific information being disputed. Second, neither the letter nor Plaintiff's expert offers any actual basis for the dispute that SLS could have reasonably investigated. Finally, Plaintiff supplied no supporting documentation substantiating her "dispute." She could not have supplied such documentation because Plaintiff had no valid basis to dispute the indebtedness. *See*, Ex. X, Harrah Depo. at 42:10 – 12 ("Q. Did you ever dispute the validness [sic] of this indebtedness? A. No, sir. I owed the money."), 49:17 – 20 ("Q. When you received a notice—or this notice or a notice like this, did you ever call someone or write someone and dispute that you owed the money? A. No, sir."). A consumer must satisfy each of these requirements to submit a valid direct dispute to a furnisher. *See*, 15 U.S.C. § 1681s-2(a)(8)(D). Because it did not receive a qualifying direct dispute, as Plaintiff's own proffered expert witness, Evan Hendircks, explained, SLS incurred no obligation to append an XB code to Plaintiff's trade line. *See*, Ex. W, Hendricks Depo. at 196:15 – 197:11 ("Q. In the normal case where it's just an indirect dispute, there has not been a direct dispute, is the compliance condition code mandatory? … A. My understanding is, no. The XB code is triggered by a direct dispute to the furnisher."). Thus, SLS is entitled to

judgment as a matter of law as to Count Three, at least to the extent it is predicated on SLS' failure to append an XB code to Plaintiff's trade line.

2. Even if Plaintiff's Correspondence Constituted a Direct Dispute, Her Suit was Not Timely Filed

Even if the May 12, 2012 letter constituted a valid direct dispute, which SLS does not concede, Plaintiff's claim is not timely. An action to enforce liability created under the FCRA must be brought within the earlier of two years from the date upon which the plaintiff discovers the violation or five years from the date of the violation. 15 U.S.C. § 1681p. Here, Plaintiff's dispute, *vel non*, was made in May 2012. At the very latest, Plaintiff was clearly aware that SLS had not appended an XB code to her account by September 2012. That month she received credit reports from all three of the major credit reporting agencies – TransUnion, Experian, and Equifax. *See*, Exs. H – J. And as her expert, Evan Hendricks, testified, had SLS appended an XB code to her trade line, those credit reports would have been annotated with a comment reflecting the account as disputed. *See*, Hendricks Depo. at 168:5 – 172:2 ("Q. If there was an XB code at that time, would these [September 2012 credit reports] have reflected that in some way? A. There should have been an XB code on here. And, yes, the answer to your question is they would have been reflected …. Q. How would it have been reflected here? A. It would have said some verbiage like, disputed by the consumer, complies with the FCRA.") Thus, the latest Plaintiff could complain that SLS failed to report the account as disputed would have been September 4, 2014. Plaintiff's Complaint, however, was not filed until December 3, 2015 – a full fifteen (15) months after the statute of limitations expired in this case. SLS is clearly entitled to judgment as a matter of law with respect to this claim, and summary judgment should issue.

C.  Specialized Loan Servicing Is Entitled to Summary Judgment Because Plaintiff
Cannot Prove She Was Damaged by the Way In Which It Investigated Her April
2015 Disputes

The FCRA only imposes liability on furnishers in a narrow set of circumstances. First,

liability only attaches where a consumer notifies a consumer reporting agency that she disputes

the accuracy of an item in her file, at which point the FCRA requires the consumer reporting

agency to notify the furnisher of the dispute. 15 U.S.C. § 1681i(a)(2). Upon receipt of this notice,

a furnisher must:

> (A) conduct an investigation with respect to the disputed information;
> (B) review all relevant information provided by the consumer reporting agency
> pursuant to section 1681i(a)(2) of this title;
> (C) report the results of the investigation to the consumer reporting agency; [and]
> (D) if the investigation finds that the information is incomplete or inaccurate,
> report those results to all other consumer reporting agencies to which the person
> furnished the information and that compile and maintain files on consumers on a
> nationwide basis....

15 U.S.C. § 1681s–2(b)(1). *See also*, *Saunders v. Branch Banking and Trust Co. of VA*, 526 F.3d

142, 148 (4th Cir. 2008). The Fourth Circuit has stated that in order to satisfy the investigation

requirement under the statute, "§ 1681s–2(b)(1) requires creditors, after receiving notice of a

consumer dispute from a credit reporting agency, to conduct a reasonable investigation of their

records to determine whether the disputed information can be verified." *Johnson v. MBNA*, 357

F.3d 426, 430 (2004). Further, to establish liability, a plaintiff must prove that the defendant

either negligently or willfully committed any violation of the FCRA that may have occurred. 15

U.S.C. § 1681n; 15 U.S.C. § 1681o.

1)  SLS Accurately Reported Plaintiff's Trade Line

Where a plaintiff asserts a cause of action under the FCRA, liability does not attach if the

underlying credit information was accurately reported in the first instance. *Dauster v. Household*

*Credit Servs., Inc.*, 396 F. Supp. 2d 663, 664 (E.D. Va. 2005) ("The Court grants Defendant's

motion because Plaintiff is attempting to collaterally attack the basis of accurately reported information. The FCRA does not provide a cause of action to collaterally attack an accurate credit report."); *See also¸ Guimond v. Credit Bureau, Inc.*, Civil No. 1:90-cv-01727 (D. Md. 1990), *aff'd on other grounds*, 955 F.2d 41, 1992 WL 33144 (Feb. 25, 1992) (unpub., per curiam); *See also*, *Whelan v. Trans Union Credit Reporting Agency*, 862 F. Supp. 824, 829 (E.D.N.Y. 1994) (noting that "the 'threshold question' is whether the challenged credit information is accurate; if the information is accurate, 'no further inquiry into the reasonableness … is necessary."); *Todd v. Associated Credit Bureau Servs., Inc.*, 451 F. Supp 447, 449 (E.D. Pa. 1977), *aff'd* 578 F.2d 1376 (3d Cir. 1978), *cert. denied,* 439 U.S. 1068, 99 S. Ct. 834 (1979); *Accord*, *Spokeo, Inc. v. Robbins*, 136 S. Ct. 1540, 1549, 194 L.Ed. 2d 635 (2016), *as revised* May 24, 2016 (finding a plaintiff failed to prove a concrete injury under the FCRA based upon violation of a purely procedural right and noting that "[c]ongress' role in identifying and elevating intangible harms does not mean that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right. Article III standing requires a concrete injury even in the context of a statutory violation.").

In this case, Plaintiff cannot prove that SLS inaccurately reported anything about the trade line at issue. At the time Plaintiff initiated the indirect disputes with the credit reporting agencies, SLS was no longer furnishing data on Plaintiff's trade line. *See*, Ex. L. The last report it had furnished reported the loan to be transferred to another lender after being charged off in 2012 following a delinquency of 180 days. *See*, *e.g.*, Ex. __, Experian Credit Report dated April 27, 2015 at 6. This reporting contained no inaccuracy. As set forth *supra*, Plaintiff acknowledged that she owed the monies. *See*, Ex. X, Harrah Depo. at 42:10 – 12 ("Q. Did you ever dispute the

valjdness [sic] of this indebtedness? A. No, sir. I owed the money."), 49:17 – 20 ("Q. When you

received a notice—or this notice or a notice like this, did you ever call someone or write

someone and dispute that you owed the money? A. No, sir."). Moreover, there can be no genuine

dispute that because Plaintiff was delinquent on the loan, it was placed in a charge off status and

transferred to recovery as of July 11, 2012. *See*, Exs. E, G – J, and W (Hendricks Depo.) at 79:15

– 82:12 ("Q. In looking at Ms. Harrah's dispute letter to the credit report agencies in April, she

took issue with the fact that it was being reported as a charge off; right? A. Yes. Q. But as the E-

Trade document production proved, that charge-off was actually done in 2012; wasn't it? …A. I

mean, as of now, one of my presumed facts is there was—it was charged off in June or July—

which one is it—2012. Q. E-Trade certainly understood it to be charged off in June of 2012;

didn't they? … A. A. Okay. So the loan was charged off in –yeah, that's according to this e-mail

from Brenda Franco. Q. So from E-Trade to E-Trade saying the loan was charged off; correct?

A. Yes."). Plaintiff cannot identify a single entry on her credit report that was inaccurate at the

time SLS furnished the report to the credit reporting agencies. SLS is entitled to summary

judgment as a matter of fact and law.

    2)  <u>Plaintiff's Theory Provides No Legally Recognized Basis for Recovery</u>

    Absent this Court adopting two novel legal theories that have never found any support in

any other jurisdiction, Defendant is necessarily entitled to judgment as a matter of law. First, the

Court would have to find that actions taken *after* the point that SLS released the loan for

servicing would somehow invalidate credit reporting preceding such actions by over two years.

*See*, Ex. W, (Hendricks Depo.) at 92:10 – 93:3 ("Q. Then during the time frame that SLS was

reporting, what required them to delete the trade line? A. The requirement that they delete it

comes after the dispute, after the dispute—they received the dispute in the spring of 2015. Q. So

I want to make sure I understand this. It's your position that actions that took place while SLS no

longer serviced the loan, a settlement that occurred after SLS no longer serviced the loan, obligated them to delete their trade line? A. Yes. … Q. Have you ever seen the court hold that way? A. Not that I remember….").  Thus, there can be no genuine dispute that the Confidential Settlement Agreement and Release, which Plaintiff contends renders SLS' prior reporting inaccurate or incomplete, was not even executed until after SLS stopped servicing the loan and after having reported the loan as transferred to Veripro Solutions in a charge off status. *See*, Exs. K and O. And that agreement was not fully performed until well over a month after SLS had ceased to either service the loan or furnish data on the trade line. *See*, Ex. P.

On these facts, Plaintiff's position makes no sense inasmuch as the furnisher's obligation under the FCRA is to provide accurate and complete reporting at the time it provides information to the credit reporting agencies. That is why the Credit Reporting Resource Guide, which tells furnishers how to report trade lines to the credit reporting agencies, advises that the account status is reported "as of" the Date of Account Information field on the ACDV. *See*, Ex. Y, Extract from Credit Report Resource Guide, at 4-11, 4-16, 5-14, 8-13. This was confirmed by Plaintiff's own expert, Evan Hendricks, who confirmed the practical meaning of the Date of Account Information field. *See*, Ex. W (Hendricks Depo.) at 184:8 – 186:22 ("Q. And 1681s-2(b), when they investigate and report the results of their investigation, is that furnishing of a credit report or is that—A. It's furnishing of information to a CRA, yes. Q. As of what time period are they reporting that the information is accurate? …There's a block that says, date of account information, and we talked earlier about, for example, when the charge-off was done in July of 2012, date of account information tells the CRA as of what date the charge-off occurred; right? A. Right … Q. The question I asked is, what does the block that says, date of account information, tell the credit reporting agency? A. In August 19th, of 2014, that it was a charge-off.

… Q. So that gives you a reference as to what time point this ACDV is speaking about; doesn't it? It tells you that as of August 19th, 2014, we are representing this as the account; aren't they? A. Yes. Q. They're not saying anything about what the account represents at any other point other than August 19th, 2014, when the date of account information says, August 19th, 2014, correct? A. Right …."). And nothing about the procedural posture of the BANA Litigation changed the accuracy of the reporting. *Id*. at 187:7 – 11 ("Q. How does a lawsuit affect what was reported two years earlier? A. If something is already reported two years earlier, a lawsuit doesn't in any way technically affect that…."). Mr. Hendricks further testified that he has never seen a court impose such retroactive liability. *See*, Ex. W (Hendricks Depo.) at 19:10 – 20:18 ("Q. Because no court has ever said that a prior servicer is liable to change their reporting based on a subsequent servicer's actions, has there? A. No. No. I mean, I don't –I can't sit here and think of that … I can't think of one.").

Even if a subsequent furnisher's handling of a trade line could render truthful and historically accurate furnisher data inaccurate or incomplete, Plaintiff's theory requires the Court to make a further unprecedented leap – it would have to find that the Confidential Settlement Agreement and Release, to which SLS was not even a party, somehow obligated SLS to effect something that Plaintiff explicitly acknowledged was *not* a material term of the agreement. *See,* Ex. O at 1.C ("This settlement is *in no way contingent* upon credit reporting agencies ultimately effecting *any* form of reporting on the Second Loan.") (emphasis added). Indeed, the only explanation Plaintiff has offered to support her claim that the trade line must be deleted comes from Mr. Hendricks who asserts without any authoritative basis that the Confidential Settlement Agreement and Release that she entered with BANA somehow obligated SLS to delete the trade line from her credit report. *See*, Ex. W (Hendricks Dep.) at 120:12 – 121:8 ("Q. In this case

19

where Bank of America agreed with Ms. Harrah that it would pay off the HELOC and there

would be no deficiency to her, how is that different than any other situation where it's paid off

but the trade line persists to exist? A. It's different because there was a legal settlement where

Bank of America basically closed out this account and paid it off. So it was zeroed out, kind of a

B to B. It's a business to business. It's not a consumer going and saying, I'm going to negotiate

with you and pay this for less than a full balance. It's Bank of America as an exchange for her

giving up her claims to litigation. So equity requires that she gets what she expected to get,

especially once she makes a dispute to a credit reporting agency. … Q. Can you point me to any

document that you reviewed where a condition of the settlement was that the trade line be

deleted—condition of the settlement between Bank of America and Ms. Harrah was that the

trade line be deleted? A. Same answer, no, it was not a condition. It was just her expectation that

it would be deleted…. Q. Does the FCRA guarantee satisfaction of expectations? A. Not that I

know of, no.").

  This theory has several flaws. Firstly, SLS was not a party to Plaintiff's settlement with

BANA. *See*, Ex. O; *See also*, Ex. W (Hendricks Depo.) at 34:21 – 35:12 ("Q. What evidence is

there that you have reviewed that shows that Specialized Loan Servicing agreed to anything with

Donna Harrah or Bank of America? A. Yeah. I'm not sure I'm aware of anything that showed

SLS agreed. If it's there, I hope somebody will show it to me … Q. In fact, the only evidence

that been put in front of you today here shows quite the opposite; doesn't it? That they said they

would not agree? A. That's right. They used the term that—something about violating the

FCRA."). As a result, SLS incurred no legal obligations as a result of this contract between

Plaintiff and BANA. To the extent that Plaintiff's claims are premised upon some heretofore

unrecognized "equitable" obligation by SLS to delete the trade line, SLS is entitled to judgment as a matter of law.

Secondly, Plaintiff's theory puts the cart before the horse by conflating her disappointment with the results of the investigation to mean the investigation itself was necessarily inadequate. Of course, like all logical fallacies, her position finds no support in the law. As Plaintiff's own expert conceded, a furnisher can look at the information available to it, reach the wrong conclusion based upon its investigation, and still not be liable under the FCRA. *See,* Ex. W (Hendricks Dep.) at 111:3 – 12 ("Q. Courts that looked at it have said that the requirement is not to necessarily get it right when you investigate; haven't they? A. I agree with you. It's a procedural right that the consumer has, a professional right to a reasonable investigation. Q. So a furnisher could look at the information available to them, get it wrong, and not be liable under the FCRA; correct? A. Yes."); *See also*, *Dauster*, 396 F. Supp. 2d at 664; *Guimond v. Credit Bureau, Inc.*, Civil No. 1:90-cv-01727 (D. Md. 1990), *aff'd on other grounds*, 955 F.2d 41, 1992 WL 33144 (Feb. 25, 1992) (unpub., per curiam); *Whelan*, 862 F. Supp. at 829; *Todd*, 451 F. Supp. at 449. The fallacy was exposed when Mr. Hendricks was pressed to explain why the investigation was inadequate in this case. When asked what documents SLS did not review during its investigation, Plaintiff's expert could only identify "documents showing that SLS knew that it was requested to delete [the trade line] by [BANA]…." Ex. W (Hendricks Dep.) at 112:7 – 9. Of course, the e-mails to which Mr. Hendricks was referring were merely a conversation between BANA and SLS wherein BANA expressed Plaintiff's desire that the trade line be deleted, to which SLS responded "unless there is something that invalidates the loan, we cannot violate the FCRA by reporting false information. Let us know if there is something that invalidates the loan." *See*, *Id*. at 112:15 – 17; Ex. N. at SLS-311 – SLS-12. Bank of America

confirmed there was no such invalidation. *Id*. Thus, there were no documents that were not reviewed by SLS.

Thirdly, a simple hypothetical revealed that Plaintiff's theory simply cannot entitle her to recover in this case. Mr. Hendricks was asked to consider a scenario in which a mortgagor falls into arrears on her loan. In the hypothetical, the loan servicer reports the loan to be charged off, after which the loan transfers to a new servicer. To complete the scenario, SLS posited that the loan then gets paid off at some point in the future. When pressed as to whether the fact that the loan was now satisfied would "change and invalidate [the] reporting of the charge-off," Mr. Hendricks conceded it would not. *Id*. at 113:18 – 115:6; 16:1 – 20:18.

3) <u>The Record Makes Clear that Specialized Loan Servicing Is Entitled To Summary Judgment As a Matter of Undisputed Material Fact and As a Matter of Law</u>

Simply put, there are no material facts in dispute. That SLS truthfully and accurately reported Plaintiff's trade line is wholly corroborated by the evidence of record. Plaintiff was obligated to pay the HELOC. *See*, Ex. X, Harrah Depo. at 42:10 – 12 ("Q. Did you ever dispute the validness [sic] of this indebtedness? A. No, sir. I owed the money."), 49:17 – 20 ("Q. When you received a notice—or this notice or a notice like this, did you ever call someone or write someone and dispute that you owed the money? A. No, sir."). She fell into arrears, and failed to make payments for more than 180 days, as SLS reported to the Credit Reporting Agencies. *See*, Exs. H-J, L. The HELOC was charged off in July 2012, as reflected in Plaintiff's credit reports. *See*, Exs. G – L; Ex. W (Hendricks Depo.) at 79:15 – 82:12 ("Q. In looking at Ms. Harrah's dispute letter to the credit report agencies in April, she took issue with the fact that it was being reported as a charge off; right? A. Yes. Q. But as the E-Trade document production proved, that charge-off was actually done in 2012; wasn't it? …A. I mean, as of now, one of my presumed facts is there was—it was charged off in June or July—which one is it—2012. Q. E-Trade

certainly understood it to be charged off in June of 2012; didn't they? … A. Okay. So the loan was charged off in –yeah, that's according to this e-mail from Brenda Franco. Q. So from E-Trade to E-Trade saying the loan was charged off; correct? A. Yes."); *See*, Ex. Z, Korb Depo. at 56:1 – 23 ("Q. Right. So when you say 'it's charged off,' that assumes you get to set the rules. That assumes you get to set the facts, right? A. When I say 'it's charged off,' that assumes by normal accounting practices that when a loan goes 180 days past due, as this one did, through normal accounting practices, you would charge off that loan as uncollectible and that is a status that is also reported to the credit reporting agencies. So the fact is …this loan was charged off from an accounting perspective, and it was reported as such. So I don't make the rules. I follow the rules. Q. Well, you follow your rules, right? A. I follow normal accounting and industry standard rules. The fact of the matter is that your client owed a debt, had paid on it for a period of time so, therefore acknowledged it was a legitimate debt, and then stopped paying through normal accounting practices. The loan after becoming 180 days past due, the investor charged it off of their books. That was the accurate reporting status.").  And SLS released servicing on the HELOC to Veripro Solutions on August 19, 2014. *See*, Ex. K. The Settlement Agreement Plaintiff reached with BANA, relating to her first trust loan, bore an Effective Date of August 29, 2014—after SLS was no longer servicing or furnishing credit information on the HELOC. *See*, Ex. O.

In order to avoid summary judgment, Plaintiff has to be able to put forward some basis in law and fact to find that (1) she lodged a legitimate dispute about which SLS willfully or negligently failed to conduct a reasonable investigation; and/or (2) that such dispute involved some inaccurately reported credit information. She cannot carry this burden. There is no record evidence that will permit this Court to find as a matter of law that SLS failed to "conduct a

reasonable investigation of their records to determine whether the disputed information can be verified." *Johnson*, 357 F.3d at 430. To the contrary, it did consider all available information. *See, e.g.,* Ex. Z, Korb Depo. at 43:8 – 49:9; 52:22 – 54:14 ("Q. Right. I think it's great that you want to say that you comply with the law. You're aware that this is a lawsuit, just like the Green lawsuit that claims your company does not comply with the law, right? You understand that's the allegation here? A. I understand that's the allegation, and I also understand that we reported 100 percent accurately of the status of the loan while we serviced the loan. So our reinvestigation … revealed the exact information that we had been reporting, and we were able to confirm we were reporting accurately for the time period we serviced the loan.")  After all, the only record Plaintiff alleges was not considered consists of an email chain between Ken Scott, a BANA paralegal, and SLS wherein BANA passed along Plaintiff's request that SLS consider deleting the trade line. Ex. W (Hendricks Dep.) at 112:7 – 9. SLS denies that it failed to consider this information, but even assuming it did, such failure cannot, as a matter of law, render the investigation unreasonable. After all, reviewing that email chain would not have provided any basis to conclude the existing reporting was inaccurate. See, Ex. Z, Korb Depo. at 20:16 – 21:25. At best, it would have shown that neither BANA nor Plaintiff had identified any basis to find the reporting was inaccurate or that a valid basis existed that mandated the deletion of the trade line because SLS made precisely that inquiry on June 23, 2014 – before Plaintiff reached her agreement with BANA – and was told that no such condition existed.

Further, even if SLS had not conducted an investigation in this case – which we know is not the case – SLS would still be entitled to judgment as a matter of law. Plaintiff has not established any inaccuracy in the reporting of her trade line as of August 19, 2014 – the "Date of Account Information" used in the investigation of Plaintiff's dispute. Absent some inaccuracy,

SLS cannot be held liable. *Dauster*, 396 F. Supp. 2d at 664; *Guimond v. Credit Bureau, Inc.*,

Civil No. 1:90-cv-01727 (D. Md. 1990), *aff'd on other grounds*, 955 F.2d 41, 1992 WL 33144

(Feb. 25, 1992) (unpub., per curiam); *Whelan*, 862 F. Supp. at 829; *Todd*, 451 F. Supp. at 449.


## <u>CONCLUSION</u>

Based upon the foregoing, Plaintiff cannot establish either as a matter of undisputed fact

or of law that she is entitled to relief against Specialized Loan Servicing, LLC. To the contrary,

the undisputed material facts prove that (1) Specialized Loan Servicing accurately reported

truthful information regarding Plaintiff's Home Equity Line of Credit, (2) that Plaintiff never

lodged a direct dispute such that Specialized Loan Servicing was required to notate the account

as being "in dispute"; (3) that Plaintiff's indirect "dispute" of Specialized Loan Servicing's credit

reporting was not well founded; and (4) that Specialized Loan Servicing conducted a reasonable

investigation of Plaintiff's  indirect dispute. Consequently, Specialized Loan Servicing, LLC is

entitled to judgment as a matter of law.


October 11, 2016                    Respectfully submitted,

                                    **SPECIALIZED LOAN SERVICING, LLC**

                                    *By: /s/ Billy B. Ruhling, II*
                                    Billy B. Ruhling, II (VSB No. 45822)
                                    **DIMUROGINSBERG, P.C.**
                                    1101 King Street, Suite 610
                                    Alexandria, Virginia 22314
                                    (703) 684-4333
                                    (703) 548-3181 (Fax)
                                    bruhling@dimuro.com

<u>**CERTIFICATE OF SERVICE**</u>

I HEREBY CERTIFY that on this 11th day of October, 2016, I electronically filed the

foregoing with the Clerk of the Court using the CM/ECF System which will then send a

notification of such filing (NEF) to the following:

> Leonard A. Bennett, Esq.
> Susan M. Rotkis, Esq.
> Craig Marchiando, Esq.
> Consumer Litigations Associates, P.C.
> 763 J. Clyde Morris Boulevard, Suite 1-A
> Newport News, VA 23601
> (757) 930-3660
> (757) 930-3662 (Fax)
> lenbennett@clalegal.com
> srotkis@clalegal.com
> cmarchiando@clalegal.com

> */s/ Billy B. Ruhling, II*
> Billy B. Ruhling, II (VSB No. 45822)